UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00158-TBR-LLK

**QUINCY OMAR CROSS**                                                                                         **PETITIONER**

**v.**

**RANDY WHITE, Warden**                                                                                 **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, to which Respondent has responded in opposition. Docket Number (DN) 6 and DN 13. The Court referred this matter to the undersigned Magistrate Judge for ruling on non-dispositive motions and findings of fact and recommendation as to any dispositive matter. DN 8.

For the reasons below, the Court finds the petition to be a "mixed" one as contemplated by *Rose v. Lundy*, 455 U.S. 509 (1982) as modified by *Rhines v. Weber*, 544 U.S. 269 (2005), i.e., a petition containing claims for which Petitioner has and has not exhausted his available state-court remedies.

Pursuant to the authority of the above cases, Petitioner shall, within 30 days of this Order, file written notice stating whether he elects to 1) have the Court stay his petition and hold it in abeyance while he pursues his state-court remedies with respect to his claim of actual innocence based on newly-discovered evidence; or 2) voluntarily withdraw his actual-innocence claim and have the Court proceed with habeas review of his remaining claims.

### Background facts and procedural history

In the summer of 2000, Jessica Currin, was murdered and her body burned and left to be discovered at the middle school in Mayfield, Kentucky. Following a jury trial in the Hickman Circuit Court in 2007, Petitioner was convicted of kidnapping, murder, rape, sodomy, abuse of a corpse, and tampering with physical evidence. He is serving three life sentences.

1

On March 18, 2010, the Kentucky Supreme Court affirmed Petitioner's convictions and sentences upon direct appeal. *Commonwealth v. Cross*, 2009 WL 4251649.

According to Petitioner, on June 1, 2011, he filed a motion to vacate, set aside, or correct sentence pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. Petition, DN 6, p. 14. The trial court denied the RCr 11.42 motion, the Kentucky Court of Appeals affirmed the denial, and the Kentucky Supreme Court denied discretionary review on May 6, 2015. *Commonwealth v. Cross*, 2014 WL 505575.

Petitioner filed the present petition on August 17, 2015. DN 6.

Petitioner's convictions were based primarily upon incriminating testimony from three key prosecution witnesses. In subsequent years, new evidence has come to light indicating that the convictions were based on perjured testimony and falsified evidence. Chief among the individuals persuaded by this evidence are the victim's father, Joe Currin, and former Kentucky Innocence Project Investigator Dale Elliott. Petitioner has appended to his petition the affidavit of Mr. Currin dated October 27, 2014, and the affidavit of Mr. Elliott dated July 26, 2012. DN 6-4 and DN 6-3.

According to Mr. Currin:

24. In March of 2007, based solely on the statement of three unreliable witnesses, Quincy Cross, Tamara Caldwell, and Jeffrey Burton were arrested for Jessica's murder.[1]

25. Victoria Caldwell, Rosie Crice, and [Vanisha] Stubblefield have recanted and stated they were forced to lie by law enforcement officers.[2]

Victoria Caldwell played a central role in implicating Petitioner. Several years after Petitioner's trial, at a Denny's restaurant in Covington, Kentucky, she confessed to Mr. Elliott that her original motivation was the reward money being offered by authorities for information regarding the ongoing and well-publicized murder investigation of Jessica Currin. Ms. Caldwell allegedly conspired with Ms. Stubblefield to make up incriminating stories of interest to authorities. DN 6-3, pp. 2-4.

---

[1] Burton and Caldwell took *Alford* pleas and have since been released from prison. DN 6-4, paragraph 27.
[2] Victoria Caldwell and Rosie Crice are sisters, and their cousin is Tamara Caldwell. DN 6-3, paragraph 4.

Ms. Caldwell told Mr. Elliott that, at trial, she repeated an elaborate version of the murder and other crimes that Kentucky Bureau of Investigation[3] Agents Lee Wise and Robert O'Neil coached her to say.[4] In truth, she has no knowledge or information concerning the murder and no idea whether Petitioner was actually involved. Id.

As to the incriminating "diary" that the prosecution utilized at Petitioner's trial, Wise and O'Neil allegedly dictated it to her while she was riding in the back of a police cruiser. Id.

Ms. Caldwell told Mr. Elliott that her willingness to perjure herself and fabricate evidence was motivated by a combination of monetary reward and threats of losing that money along with her welfare, food stamps, and even her child if she did not go along. Id.

Mr. Elliott also spoke with Ms. Caldwell's sister, Rosie Crice. Like her sister, Ms. Crice explained that her perjured trial testimony was motivated by a combination of threats and rewards. Id.

Mr. Elliott[5] also recorded an interview between himself and Vanisha Stubblefield. The transcript is at DN 6-2. Like the other two key witnesses, Ms. Stubblefield states that authorities intimidated her into perjuring herself.[6]

### The petition is a "mixed" one containing both exhausted and unexhausted claims.

Petitioner raises the same claims presented to and rejected by the state courts in his direct appeal and collateral attack pursuant to RCr 11.42.

Additionally, he brings a new claim, which he states was "not raised in state court." DN 6-1, p. 3. Petitioner characterizes the claim as one of "actual innocence [based on] newly discovered evidence," i.e., the information from Mr. Elliott, summarized above, which came to light only "after

---

[3] The KBI was founded in 2004 by former Kentucky Attorney General Greg Stumbo. Mr. Stumbo's successor, Jack Conway, reorganized it into the Kentucky Department of Criminal Investigations.

[4] Wise and O'Neil allegedly based their version of events upon the investigations and scenarios proposed by Susan Galbreath and journalist Tom Mangold. In 2009, Ms. Galbreath received the first-ever KBI Kentucky Outstanding Citizen Award for her role in "solving" the Jessica Currin murder case.

[5] Private investigator John Poole also participated in the interview.

[6] Perversely, Ms. Stubblefield stated that she was threatened with perjury charges when she indicated she would not tell a lie. "So, therefore, I just went on and stuck with the situation and with the story that they told me to say." DN 6-2, p. 38.

3

direct appeal and RCr 11.42 motion were filed in state courts." Id.  Alternatively, Petitioner describes the claim as one of "actual innocence ... based on false, perjured and fabricated evidence." Id.[7]

A federal court may not grant habeas corpus relief unless the petitioner has exhausted all available state-court remedies or demonstrated their inadequacy.  28 U.S.C. § 2254(b).

*Rose v. Lundy*, 455 U.S. 509, 510 (1982) held that a federal habeas court must "dismiss such mixed petitions, leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court."

Therefore, pursuant to *Rose v. Lundy*, Petitioner shall elect to either:  1) voluntarily withdraw his unexhausted claims and proceed with habeas review; or 2) defer habeas review until after exhaustion of state-court remedies.

### Kentucky Rules of Civil Procedure (CR) 60.02(f) apparently provides Petitioner a presently-available state-court remedy with respect to his new claim.

Post-conviction claims of actual innocence based on newly-discovered evidence are typically presented to the state courts via a motion pursuant to Kentucky Rules of Civil Procedure (CR) 60.02(f).[8] For example, in *King v. Commonwealth*, 2014 WL 3547480 (Ky.App.), the Kentucky Innocence Project filed a Rule 60.02(f) motion on Ms. King's behalf some four years after she entered an *Alford* plea to manslaughter and began serving a 10-year sentence.  The motion was predicated on a recent confession

---

[7] Petitioner presents an additional new claim that appellate counsel was ineffective on direct appeal for not raising the trial court's error of not conducting a pre-trial hearing regarding the ability of the key prosecution witnesses to testify truthfully in light of their prior false statements.  Preliminarily, the Court finds that the claim is without merit and/or Petitioner has no available state-court remedy with respect to the claim, which is procedurally defaulted.

[8] CR 60.02 provides that:  "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.  The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.  A motion under this rule does not affect the finality of a judgment or suspend its operation."

by another person, Jarrell, to having committed the murder.  King asserted her actual innocence and sought relief based on newly-discovered evidence.

The Court held that "[i]t is self-evident that the conviction of an innocent person offends both social norms of justice and the laws embodied in our Constitution"[9] and that "[w]hen a person previously convicted of a crime by jury trial or guilty plea can demonstrate actual innocence with newly discovered evidence, it is constitutionally incumbent upon the state to provide a post-conviction procedure to vacate the judgment and grant a new trial."

To prevail on a claim of actual innocence pursuant to CR 60.02(f), the movant must demonstrate that the newly-discovered evidence is "of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result."  Id. citing *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky.2014).  Also, "newly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence."  Id. citing *Foley* at 887.

Based on the trial court's findings that 1) "Jarrell was completely unknown to King, law enforcement, or the Commonwealth as having any connection to the murder of Breeden prior to his May 4th confession" and 2) "Jarrell's confession would be evidence that with reasonable certainty [would] change the verdict or probably change the result," the appellate court remanded the matter to the trial court for a new trial.

While it is not this Court's role to say whether CR 60.02(f) relief is or is not ultimately available in this case,[10] Petitioner has established a prima facie case for the Rule's applicability in light of the fact that a jury found his co-defendant, Austin Leech, not guilty based on substantially the same evidence

---

[9] "In particular, the conviction of an innocent person would violate the Eighth Amendment, Fifth Amendment and Fourteenth Amendment of the United States Constitution and Section 2 and Section 17 of the Kentucky Constitution."  *King* at n.1.
[10] In the event the state court finds CR 60.02(f) to be inapplicable to the facts of this case or procedurally defaulted as a matter of state law, that finding will convert the petition into a fully-exhausted one.  Petitioner may then return to this Court, and habeas review will proceed.

presented at Petitioner's trial. If (hypothetically) Petitioner's jury had been aware of the evidence as a whole, including the future recantations of the prosecution's key witnesses, plausibly, the jury would have acquitted him. As to Petitioner's diligence, it is unclear why the Kentucky Innocence Project did not file a Rule 60.02(f) motion on Petitioner's behalf as in *King*, supra.[11] The fact that a motion was not filed appears to have been a circumstance beyond Petitioner's control. In any event, it is not apparent that the alleged perjury and falsified evidence (i.e., the "diary") was discoverable prior to Mr. Elliott's affidavit and/or the information contained therein.

CR 60.02(f) motions are not limited to cases, such as *King*, supra, in which someone else confessed to the crime. Recanted testimony – as in this case – also qualifies. See, for example, *Brown v. Commonwealth*, 2015 WL 3532993 (Ky.App.) ("Our Supreme Court has recognized that the perjured testimony of a witness in a criminal trial may constitute grounds of an extraordinary nature justifying relief pursuant to CR 60.02(f)") citing *Commonwealth v. Spaulding*, 991 S.W.2d 651, 657 (Ky.1999). To be entitled to such relief, a movant must demonstrate that "a reasonable certainty exists as to the falsity of the testimony and that the conviction probably would not have resulted had the truth been known." Id. quoting *Spaulding*; see also *Pappas v. Commonwealth*, 2012 WL 246252 (Ky.App.) (a CR 60.02 motion for a new trial based on recanted testimony does not fall within the 1-year period of limitation prescribed by CR 60.02(b) for "newly-discovered evidence" or CR 60.02(c) for "perjury or falsified evidence" so long as the circumstances are "extraordinary" as contemplated by CR 60.02(f) and the court is satisfied with the reliability of the recantation).[12]

---

[11] It appears that the Kentucky Innocence Project, although it still exists, was experiencing some budget cuts and Mr. Elliott was relieved of further responsibility in the matter at about the time such motion would have been filed.

[12] There is ample authority for the proposition that, under state law, recantation testimony, although generally viewed with great suspicion, in extraordinary circumstances, warrants an evidentiary hearing and findings by the trial court as to reliability. Compare *Taylor v. Commonwealth*, 175 S.W.3d 68 (Ky.2005) (co-defendant's recantation of his statement implicating defendant did not entitle defendant to a new trial because the trial court properly found the recantation incredible and, with or without the incriminating statement and subsequent recantation, defendant's proof of guilt was "overwhelming and no jury could fail to find guilty beyond a reasonable doubt"); *Southern v. Commonwealth*, 2012 WL 114124 (Ky.App.) (trial court did not abuse its discretion in

Because Petitioner apparently has an available state-court remedy for his new claim premised on the information discovered by Mr. Elliott, his petition is a mixed one contained both exhausted and unexhausted claims. The Court will require him to make the election contemplated by *Rose v. Lundy.*

**Federal-state comity is not offended by allowing Petitioner
to pursue an available state-court remedy with respect to his new claim.**

Respondent's position with respect to Petitioner's new claim is that "claims of actual innocence based on newly discovered evidence are not grounds for federal habeas relief." DN 13, p. 82 citing *Herrera v. Collins*, 506 U.S. 390 (1993).

Habeas relief is available only if the petitioner is being held in state custody "in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

The historical view is that freestanding claims of actual innocence are not cognizable in a federal habeas corpus petition because a habeas courts sits only to ensure that individuals are not imprisoned based on a "constitutional violation occurring in the underlying state criminal proceeding ... not to correct errors of fact" that come to light after that proceeding. Herrera at 400; see also *Cress v. Palmer*, 484, F.3d 844, 584 (6th Cir.2007) (collecting authorities for this view).

It is unsettled at the present time whether and under what circumstances a freestanding claim of actual innocence similar to Petitioner's may rise to the level of a cognizable constitutional violation.

*Herrera*, supra, held that a claim of actual innocence may constitute cause excusing a procedural default and, therefore, serve as a "gateway" through which a federal habeas court may properly consider another otherwise procedurally-defaulted claim. As to a "freestanding" actual-innocence claim, *Herrera* assumed without deciding that "in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id. at 417.

---

conducting an evidentiary hearing and finding recantation unreliable); *Vires v. Commonwealth*, 2011 WL 941535 (Ky.App.) (same); *LaGrand v. Commonwealth*, 2008 WL 3875933 (Ky.App.) (same); *H.V. v. Commonwealth*, 2008 WL 612343 (same).

To date, the Supreme Court has not decided whether a freestanding claim of actual innocence is sufficient to merit federal habeas relief.  See *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence") (holding that actual innocence, if proved, serves as a gateway to excuse a petitioner's untimely filing of his habeas petition).

Unlike the Supreme Court, state courts, including Kentucky, have recognized the viability of freestanding actual-innocence claims in extraordinary circumstances.  For example, in *King v. Commonwealth*, supra, at n.1 – a non-capital – the state court considered a post-conviction freestanding claim of actual innocence under CR 60.02(f) on the ground that:

> It is self-evident that the conviction of an innocent person offends both social norms of justice and the laws embodied in our Constitution.  ... [1] In particular, the conviction of an innocent person would violate the Eighth Amendment, Fifth Amendment and Fourteenth Amendment of the United States Constitution and Section 2 and Section 17 of the Kentucky Constitution.  In *Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court recognized that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional...."

See also *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex.Crim.App.1996) ("[T]he incarceration of an innocent person is as much a violation of the Due Process Clause as is the execution of such a person.  It follows that claims of actual innocence are cognizable by this Court in a post-conviction habeas corpus proceeding whether the punishment assessed is death or confinement.  In either case, such claims raise issues of federal constitutional magnitude") and *Innocence Presumed:  A New Analysis Of Innocence As A Constitutional Claim*, Paige Kaneb, 50 Cal. W. L. Rev. 171 (Article, Spring 2014) ("[T]he emerging modern consensus that the Eighth Amendment prohibits the continued punishment of the innocent and the Due Process Clause of the Fourteenth Amendment requires judicial review of compelling claims of innocence, irrespective of how long after conviction new evidence is discovered").

Under the extraordinary circumstances of this case, in which the state courts apparently find the underlying claim to be more securely grounded in the Constitution than the federal courts, the state

8

courts' view is the more progressive one, and there appears to be a presently-available state-court remedy, neither federal-state comity nor any other principle of federal habeas corpus jurisprudence of which the Court is aware is offended by the Court's declining to rule on the claim until such time as it gives Petitioner an opportunity to present his claim to the state courts.

The Court declines to pre-judge the claim's cognizability because it is possible that the Supreme Court will issue a more definitive ruling while Petitioner is pursuing his state-court remedies.[13]

### If Petitioner elects to pursue his state-court remedies, the Court will stay his petition and hold it in abeyance.

As stated above, *Rose v. Lundy*, 455 U.S. 509, 510 (1982) held that a federal habeas court must "dismiss such mixed petitions, leaving the prisoner with the choice [1] of returning to state court to exhaust his claims or [2] of amending or resubmitting the habeas petition to present only exhausted claims to the district court."

While the above election remains basically intact, enactment in 1996 of the 1-year period of limitation contemplated by 28 U.S.C. § 2244(d)[14] made the first option problematic in some cases: Where the mixed petition was barely filed in a timely manner in the first place, outright dismissal of the

---

[13] If the state court finds Petitioner's actual-innocence claim to be without merit, Petitioner will be required to show that the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) – an impossible task absent a more definite Supreme Court ruling.

[14] 28 U.S.C. § 2244 provides as follows:
"(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

entire petition would re-initiate the running of the 1-year period of limitation, making it unlikely (and, in some cases, impossible), as a practical matter, that the petitioner would be able to return to federal court with a timely fully-exhausted petition. "As a result of the interplay between [Section 2244(d)'s] 1–year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275 (2005).

Responding to "the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike," id. at 275, the Supreme Court approved the use of a stay and abeyance procedure in "limited circumstances," id. at 277, stating that:

> it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if [1] the petitioner had good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

Id. at 278.

In this case, Petitioner's 1-year period of limitation began running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" as contemplated by Section 2244(d)(1)(D). The factual predicate underlying Petitioner's actual-innocence claim is summarized in Mr. Elliott's affidavit (DN 6-3) and, according to Petitioner, he discovered it some time "after [Petitioner's] direct appeal and RCr 11.42 motion [had been] filed in state courts" (DN 6-1, p. 3).

If the Court does not hold the petition in abeyance, upon Petitioner's return to this Court, the statute of limitations will require the Court to determine the precise date upon which Petitioner could have, through due diligence, discovered the underlying factual basis of his actual-innocence claim. Due to the inherent difficulty of determining this date and the gravity of this ambiguity to Petitioner, the Court will exercise its discretion to treat the mixed petition as one of those that, if dismissed outright,

would result in petitioner's running a substantial "risk of forever losing [his] opportunity for any federal review of [his] unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 275 (2005).

Having satisfied the above threshold requirement, the Court finds that Petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that he engaged in intentionally dilatory litigation tactics.

Therefore, in the event Petition elects to pursue his state-court remedies, the Court will stay his petition and hold it in abeyance.[15]

### ORDER

The Court being sufficient advised, IT IS HEREBY ORDERED that Petitioner shall, within 30 days of this Order, file written notice stating whether he elects to 1) have the Court stay his petition and hold it in abeyance while he pursues his state-court remedies with respect to his claim of actual innocence based on newly-discovered evidence; or 2) voluntarily withdraw his actual-innocence claim and have the Court proceed with habeas review of his remaining claims.

---

[15] The Court will also put Petitioner on terms to file his RCr 60.02(f) motion in state court within 30 days and to return to this Court and re-submit his petition within 30 days after ruling on the motion and exhaustion of appeals. See *Palmer v. Carlton*, 276 F.3d 777 (6th Cir.2002).

**NOTICE**

The undersigned Magistrate Judge regards the present memorandum opinion and order as non-dispositive of Petitioner's new claim of actual innocence and his petition as a whole. The parties are free to seek review of this order within 14 days after being served with a copy pursuant to Fed.R.Civ.P. 72(a).

However, the parties are hereby notified that, after Petitioner makes the election described in this order, the undersigned intends to submit findings to the District Judge reiterating and incorporating by reference the findings and conclusions contained herein and recommending that the Court either dismiss Petitioner's new claim with prejudice or dismiss the claim without prejudice and stay his petition and hold it in abeyance, which the undersigned regards as case-dispositive.

Therefore, the parties may wish to delay any objection to this order and instead file objections to the future report and recommendation pursuant to Fed.R.Civ.P. 72(b).[16]

c:	pro-se

---

[16] The standard of review is more favorable to an objecting party pursuant to Rule 72(b) as opposed to Rule 72(a): The District Judge will set aside a non-dispositive order that is "clearly erroneous or is contrary to law" but will "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to" and will "accept, reject, or modify the recommended disposition" as he sees fit.