UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00158-TBR

QUINCY OMAR CROSS                                                                                    PETITIONER

v.

RANDY WHITE                                                                                            RESPONDENT

**Memorandum Opinion and Order**

Petitioner Quincy Omar Cross filed this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. [DN 6.] The Court referred this matter to Magistrate Judge King for rulings on all non-dispositive motions and findings of fact and recommendations as to any dispositive matter. [DN 8.] Magistrate Judge King issued a Findings of Fact and Recommendation on March 8, 2016, incorporating his earlier Memorandum Opinion and Order from February 23, 2016, [DN 15], recommending that the Court stay Cross's "petition for writ of habeas corpus . . . and hold it in abeyance while [Cross] exhausts his state-court remedies with respect to his new claim of actual innocence based on newly-discovered evidence." [DN 18.] The Attorney General of the Commonwealth of Kentucky, counsel for Respondent Randy White, filed Objections to Magistrate Judge King's ruling. [DN 19; DN 22.] The Court must review *de novo* the portions of the Magistrate's Report and Recommendation to which Respondent objects. 28 U.S.C. § 636(b)(1). The Court held an evidentiary hearing on October 13, 2016, to determine whether Cross had good cause for his failure to exhaust his claim of

actual innocence in state court. For the reasons explained below, Respondent's objections are OVERRULED.

## I. Facts and Procedural History

Petitioner Cross is currently serving a life sentence in Kentucky. The Kentucky Court of Appeals previously summarized the facts of Cross' convictions as follows:

> Eighteen-year-old Jessica Currin was brutally murdered in Mayfield, Kentucky, and her body was found near a local middle school on the morning of August 1, 2000. The body had been set on fire and begun to decompose. The medical examiner opined that Jessica had been strangled with a braided belt, a charred remnant of which was found near her neck.
>
> Investigators initially charged two of Jessica's acquaintances with the crime, Carlos Saxton and Jeremy Adams. All charges against the two were later dismissed.
>
> Following further investigation, in 2007, Cross and four co-defendants were charged with crimes related to Jessica's murder.
>
> At trial the Commonwealth presented evidence that on the night of July 29, 2000, Jessica had accepted a ride in Cross's car, believing he would take her home. He did not. When Jessica rejected Cross's romantic advances, he reacted violently. Cross took Jessica to a home in Mayfield, Kentucky. He rendered her unconscious, raped and sodomized her, strangled her to death, performed sex acts on her corpse, and instructed some of his co-defendants to do the same. Jessica's body was removed to an area near the middle school and set on fire.
>
> A jury convicted Cross of kidnapping, intentional murder, first-degree sodomy, first-degree rape, abuse of a corpse, and tampering with physical evidence. He was given a life sentence.

*Cross v. Commonwealth*, No. 2011-CA-002136-MR, 2014 WL 505575, at *1 (Ky. Ct. App. Feb. 7, 2014), *review denied*, (May 6, 2015). Following his conviction, Cross pursued a direct appeal, which the Kentucky Supreme Court ultimately denied in

March of 2010. *Cross v. Commonwealth*, No. 2008-SC-000465-MR, 2009 WL 4251649, at *13 (Ky. Nov. 25, 2009), *as modified on denial of reh'g* (Mar. 18, 2010). In June 2011, Cross, proceeding *pro se*, filed a motion to vacate his sentence and judgment pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42 in Graves County Circuit Court. *See* [DN 6 at 14; DN 19 at 4.]; *see also Cross v. Commonwealth*, 2014 WL 505575, at *1. Graves Circuit Court denied Cross's Motion, and the Kentucky Court of Appeals affirmed. *Cross v. Commonwealth*, 2014 WL 505575, at *1. The Kentucky Supreme Court denied discretionary review on May 6, 2015. *See* [DN 6 at 14; DN 19 at 4.] Subsequently, Cross filed the current action seeking a writ of habeas corpus on August 17, 2015. [DN 6.]

Cross's petition for habeas relief is based in part upon evidence he claims is newly discovered, and was not available to him during his direct appeal or during his RCr 11.42 proceedings. [DN 6 at 13.] Cross asserts a claim of actual innocence based upon three items of newly discovered evidence. [*Id.*] First, Cross presents a transcript of an interview with Vanisha Stubblefield, a key witness who testified for the Commonwealth. [DN 6-2.] The date of the interview is unknown, but it was transcribed on April 25, 2012. [*Id.* at 52.] In her interview, Stubblefield admits that she gave false testimony during Cross's trial, explaining that she did so because law enforcement "made" her. [*Id.* at 9; 25-27; 38.] Second, Cross relies upon a July 26, 2012 affidavit from Dale Elliot, an investigator with the Kentucky Innocence Project. [DN 6-3.] Elliot states that two of the Commonwealth's key witnesses, Victoria Caldwell and Rosie Crice, admitted to him

3

that they provided false testimony against Cross in exchange for money and because they were threatened and intimidated by law enforcement. [*Id.* at 2-5.] Elliot contends that the theory of the Commonwealth's case and the physical evidence at the crime scene were not consistent, [*id.* at 7], concluding that there were "fundamental flaws in the Currin investigation," [*id.* at 5]. Finally, Joe Currin, the victim's father, states via affidavit that Cross was wrongfully convicted for the murder of his daughter. [DN 6-4 at 4.] Currin points to what he believes are flaws and inadequacies in the investigation of his daughter's murder. [*Id.* at 1-4.] His affidavit is dated October 27, 2014. [*Id.* at 5.]

The Court referred Cross's action to Magistrate Judge King for rulings on all non-dispositive motions and findings of fact and recommendations as to any dispositive matter. [DN 8.] After briefing, Magistrate Judge King issued a Findings of Fact and Recommendation, [DN 18], incorporating his earlier Memorandum Opinion and Order, [DN 15]. Magistrate Judge King recommends that the Court stay Cross's petition and hold it in abeyance while Cross exhausts his claim of actual innocence in state court. [DN 18.] Respondent objects to a stay of this case, *see* [DN 19, DN 22], so the Court must review *de novo* Magistrate Judge King's recommendation of a stay, 28 U.S.C. § 636(b)(1).

## II. Discussion

A prisoner may not seek federal habeas relief until he has exhausted all available state remedies or demonstrated their inadequacies. 28 U.S.C. § 2254(b); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam). "In other

words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) applies to all habeas petitions filed after April 24, 1996. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998) (citations omitted). Prior to the passage of AEDPA, the Supreme Court held that "federal district courts [could] not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). The Court explained that "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Id.* (citing *Lundy*, 455 U.S. at 518-19). Therefore, the Court "imposed a requirement of 'total exhaustion' and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance." *Id.* at 274 (citing *Lundy*, 455 U.S. at 522).

However, when Congress enacted AEDPA, it not only preserved the total exhaustion requirement, but also imposed a one-year statute of limitations for petitioners to seek habeas relief. *See* 28 U.S.C. § 2244(d)(1). While the statute of limitations is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), it is not tolled by the filing of a petition for habeas corpus in federal court. *Rhines*, 544 U.S. at 274-75 (citing *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)). The Court has recognized that "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and [the total exhaustion] requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 275. Therefore, the Supreme Court has established that under "limited circumstances," a district court may utilize stay and abeyance to preserve the petitioner's opportunity for federal review. *Id.* at 277. As Magistrate Judge King recognized, Cross's petition is a mixed one, containing both exhausted and unexhausted claims. [DN 18 at 1.] For the Court to stay Cross's petition, there must be (1) good cause for the Cross's failure to exhaust his claims first in state court, (2) no indication that Cross engaged in dilatory tactics, and (3) Cross's unexhausted claims cannot be "plainly meritless." *Id.* at 278. The Court will address each prong of *Rhines* in turn.

### A. Good Cause

Following *Rhines*, the Supreme Court and the Sixth Circuit have provided little guidance on what constitutes good cause. The Court did state in *Pace v.*

6

*DiGuglielmo*, albeit in dicta, that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." 544 U.S. 408, 416 (2005). The Sixth Circuit, meanwhile, has never directly passed upon the issue, although it has provided some guidance. In *Hodge v. Haeberlin*, the court suggested that "the fact that . . . evidence could have been discovered sooner through due diligence" was one reason to deny a motion to stay a habeas proceeding. 579 F.3d 637, 638 (6th Cir. 2009). Conversely, the court stated in *Wagner v. Smith* that "Petitioner seems to have a compelling 'good cause' argument that his appellate counsel was ineffective for failing to raise [unexhausted] claims on appeal to the state court of appeals." 581 F.3d 410. *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 322-323 (6th Cir. 2012) (petitioner had good cause for failing to raise *Brady* issue when new evidence was not disclosed until after § 2254 petition was filed).

Similarly, other circuit courts have only occasionally addressed the proper definition of good cause. For instance, in *Blake v. Baker*, the Ninth Circuit considered the case of a petitioner who alleged that, among other things, his trial counsel was ineffective in failing to present evidence regarding his abusive upbringing and mental illness. 745 F.3d 977, 979 (9th Cir. 2014). Blake's ineffective assistance of trial counsel was unexhausted, so he requested a *Rhines* stay and abeyance in order to return to state court to pursue that claim. *Id.* As grounds for his motion, Blake claimed that he had good cause for failing to exhaust that claim because his attorney during his state post-conviction proceedings was

7

also ineffective in failing to discover and present evidence pertaining to Blake's background. *Id*. "In other words, Blake argued that his state post-conviction counsel was ineffective for failing to discover the same evidence underlying his trial-counsel IAC claim." *Id*. The district court denied Blake's motion for a *Rhines* stay, holding that "IAC by post-conviction counsel did not constitute good cause." *Id*.

The Ninth Circuit reversed, holding that the district court abused its discretion by denying the petitioner's request for a stay and abeyance. *Id*. at 983. The court agreed with Blake that "IAC by post-conviction counsel can be good cause for a *Rhines* stay." *Id*. In so holding, the court wrote, "While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will." *Id*. at 982. Conversely, "unspecific, unsupported excuses for failing to exhaust—such as unjustified ignorance—[do] not satisfy the good cause requirement." *Id*. at 981. *Accord Valdovinos v. McGrath*, 423 F. App'x 720, 722 (9th Cir. 2011) (district court did not abuse discretion in granting stay to petitioner who, among other things, "did not bear the blame for omitting the additional evidence rendering his claims unexhausted because he had no knowledge of it due to the misconduct of the prosecution."); *but see Alvarez v. Knowles*, 539 F. App'x 807, 808 (9th Cir. 2013) (affirming district court's denial of stay when petitioner was *pro se* and had only limited access to materials in prison).

8

Other district courts in this circuit have relied upon a similar good cause standard first articulated by a Nevada district court, which held:

> [T]he good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Riner v. Crawford*, 415 F. Supp. 2d 1207, 1211 (D. Nev. 2006). *See, e.g., Tullis v. Kontah*, No. 2:06-cv-1025, 2007 WL 915197, at *6 (S.D. Ohio Mar. 26, 2007) (Graham, J.; King, M.J.) (citing *Riner*, 415 F. Supp. 2d at 1211). The Court recognizes that other federal courts apply the stricter "objective factor external to the defense" standard applicable to procedural default. *See Williams v. Hurley*, No. 2:05-CV-985, 2006 WL 1650771, at *10 (S.D. Ohio Jun. 6, 2006) (Report & Recommendation) (citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991)) (recognizing split of authority regarding proper good cause standard). However, the weight of authority within this circuit counsels that the more lenient standard articulated by the Nevada district court in *Riner*, and relied upon by the Ohio district courts, is the proper one.

Here, the record demonstrates that Cross did indeed have good cause for failing to exhaust his claim of actual innocence based upon newly discovered evidence. During the October 13, 2016 evidentiary hearing, Cross testified that when he filed the instant petition, he was unrepresented and unaware that all his arguments in this court must first be exhausted in state court. Apart from a brief

stint in the Job Corps, Cross has no education beyond the ninth grade, nor does he have any legal training. In fact, Cross stated that a significant portion of both his RCr 11.42 motion in state court and his petition in this Court were drafted with the help of jailhouse lawyers. Particularly, other inmates informed Cross about the possibility of raising a claim of actual innocence. After conducting some research on his own in the prison's legal library, Cross decided to file this petition in federal court because he felt it was the best place to seek vindication of his constitutional rights.

Additionally, there is some evidence suggesting Cross was confused regarding the Kentucky Innocence Project's involvement in his case. Cross testified that the Innocence Project conducted research and investigated on his behalf, but to his knowledge, the organization never did any legal work for him. Cross does not know how the Innocence Project became involved in his case, nor is he aware of the extent of its investigation. Furthermore, Cross states that he did not discover that the Innocence Project was no longer pursuing his case until a significant period after the organization ceased its participation. According to Cross, he was never advised by the Innocence Project or anyone else that he needed to present his new evidence in state court before he pursued his actual innocence claim in federal court.

These facts show that Cross had good cause for failing to exhaust his claim of actual innocence in state court. Due to Cross's "own ignorance or confusion about the law or the status of his case," he did not first present his newly-discovered

10

evidence to a state court before attempting to present it here. *Riner*, 415 F. Supp. 2d at 1211. And Cross's confusion regarding the status of his case was in turn caused by the Kentucky Innocence Project's apparent failure to stay in good contact with Cross, a "circumstance[] over which he had little or no control." *Id*. Ultimately, "[t]he Supreme Court . . . intended the district court find 'good cause' in the equitable sense," *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007), and here, equity would not be best served by turning away Cross's claim of actual innocence before he has a chance to raise that claim in state court.

### B. Dilatory Tactics

Next, Cross may not have engaged in dilatory tactics. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). Because Respondent does not seriously argue that Cross intentionally delayed bringing his unexhausted claim, the Court will not linger on this second prong. Suffice it to say that the record before the Court does not suggest that Cross has intentionally or willfully drug his feet. Indeed, if Cross does believe he is an innocent man, he would have no logical reason to delay these proceedings. Cross has satisfied the second prong of *Rhines*.

### C. Merit of Cross' Actual Innocence Claim

Finally, to grant a *Rhines* stay, the Court must be satisfied that Cross's claim of actual innocence based upon newly discovered evidence is not "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 278 (2005). On this point, Respondent argues that Cross's actual innocence claim has no merit because his "newly-discovered evidence" is not actually new. Rather, Respondent believes that Cross's new evidence is

11

duplicative of the arguments he raised at trial. Because the jury rejected those arguments, Respondent says, Cross cannot repackage them as new evidence and succeed on this petition. But in two ways, Respondent's arguments miss the mark. To be certain, Cross has argued all along that he did not murder Jessica Currin. In that sense, then Cross's claim of actual innocence is not new. But Cross's unexhausted claim before this Court is more nuanced. Cross indeed argues that he is innocence of the crimes of which he was convicted, but he does so based upon three items of evidence that did not exist at the time of his trial.

Even if the substance of Cross's new exhibits is, as Respondent suggests, the same as the arguments Cross raised at trial, the state courts should get the first bite at the apple. The proper method of presentation of newly-discovered evidence in Kentucky state court is by a motion under Kentucky Rule of Civil Procedure (CR) 60.02. In fact, the Court is aware that Cross's CR 60.02 proceedings are already ongoing in Graves Circuit Court. *See* [DN 34 at 1.] That court has, in turn, sided with the arguments advanced by Respondent in this case; namely, that the inconsistencies raised by Cross's newly-discovered evidence were already presented at trial and rejected by the jury. [*Id.* at 3-5.] Alternatively, the state court held that Cross's CR 60.02 motion was brought too late in time to be granted relief under that rule. [*Id.* at 5.] But that does not mean that Cross's actual innocence claim, properly exhausted and brought back before this Court, is "plainly meritless." *Rhines*, 544 U.S. at 278. Rather, once Cross exhausts his actual innocence claim via his CR 60.02 motion in the Kentucky courts, he can bring that claim back to

12

federal court. If the state courts hold that Cross's CR 60.02 motion must be denied because he failed to comply with state procedural rules, and his failure provides an adequate and independent ground for the state's denial of relief, then Cross's claim of actual innocence will be cognizable in this Court only upon a showing of cause and prejudice, *Reed v. Farley*, 512 U.S. 339, 353-55 (1994), or upon a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Either way, it is still possible that Cross's claim of actual innocence could entitle him to relief in this Court, regardless of the state court's disposition of his CR 60.02 motion. Therefore, it cannot be fairly said that Cross's unexhausted claim is "plainly meritless," justifying a denial of a *Rhines* stay in this case.

### III. Order

The Court referred this matter to the United States Magistrate Judge, who filed his Findings of Fact and Recommendation. The Court has conducted a *de novo* review of the Magistrate Judge's report in light of Respondent's objections. Accordingly, IT IS HEREBY ORDERED:

(1) Respondent's objections to the Magistrate Judge's Findings of Fact and Recommendation [DN 19; DN 22] are OVERRULED;

(2) The Court ADOPTS the Magistrate Judge's Findings of Fact and Recommendation [DN 18] and will hold the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in abeyance pending exhaustion of state court remedies.

(3) The Clerk of Court is directed to STAY proceedings in this case pending further notice.

(3) Within sixty (60) days of the Graves Circuit Court's ruling on Petitioner's CR 60.02 motion and exhaustion of appeals, Petitioner is ORDERED to return to this Court and file a motion asking the Court to lift the stay.

(4) Petitioner is warned that failure to abide by the above time restrictions may result in dismissal of his entire petition.

CC: Counsel of Record