UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

QUINCY OMAR CROSS,                                                    PETITIONER

v.                                                          No. 5:15-cv-158-BJB

RANDY WHITE, *Warden*                                                RESPONDENT

* * * * *

MEMORANDUM OPINION & ORDER

Quincy Omar Cross petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from a state conviction for the kidnapping, rape, and murder of Jessica Currin. During Cross's trial, two women—Victoria Caldwell and Vinisha Stubblefield—testified that Cross sexually harassed Currin, forced her to Jeff Burton's house, struck her, sexually assaulted her while she was unconscious, strangled her to death, and then ordered several others remove the body and burn it at a middle school. Another woman, Rosie Crice, testified that Cross confessed that he was present during the crime. All the women had changed their stories from what they initially said years earlier after the murder was first discovered. And Crice even recanted during the trial, claiming the police coerced her to lie. All the women were cross-examined by defense counsel regarding these inconsistencies. In the end, a jury convicted Cross of multiple charges and the judge sentenced him to life.

Cross lost his direct appeals and his petitions for state post-conviction relief failed. But in 2012, Dale Elliot—an investigator with the Innocence Project—signed an affidavit stating that Caldwell had recanted her testimony to him and told him the state coerced her into giving false testimony. Elliot also indicated that the physical evidence did not match the government's story and that Crice had recanted as well. Moreover, Stubblefield signed her own affidavit claiming that the state coerced her into falsely accusing Cross. This was enough to convince the victim's own father of Cross's innocence.

Based on this information, Cross sought habeas relief in federal court. His grounds for relief included several due-process and ineffective-assistance claims that the state courts had adjudicated. But he also included a so-called "actual-innocence" claim based on the "new evidence." Because that claim was unexhausted, the Magistrate Judge suggested Cross first return to state court under Kentucky Rule 60.02. Cross did. And the state courts rejected his request for a new trial as procedurally barred and meritless. So Cross returned to federal court seeking relief for actual innocence, ineffective assistance, and the denial of his directed-verdict

1

motion.  The Magistrate Judge characterized Cross's actual-innocence claim as a state-misconduct claim under the federal Due Process Clause for knowingly using perjured testimony.  So the Magistrate Judge recommended that the claim was not defaulted, but nevertheless failed because state misconduct required prosecutorial misconduct, which Cross hadn't alleged.  He also recommended granting a certificate of appealability on that issue, but denying the remaining claims as reasonably decided.  The Commonwealth objected because it believed the actual-innocence claim was procedurally defaulted, while Cross also objected on the ground that police misconduct sufficed to establish state misconduct.

Reviewing the claims de novo, the Court rules that Cross's actual-innocence claim is freestanding and thus not cognizable.  Even if he were raising a due-process claim, however, he never raised that claim in state court, so it's procedurally defaulted.  Moreover, the state courts reasonably decided all Cross's claims.  So the Court adopts in part and rejects in part the Second Report and Recommendation (DN 57), overrules Cross's objection (DN 58), sustains the Commonwealth's objection (DN 59), denies Cross's § 2254 petition (DN 6), and denies a certificate of appealability.

## I.   Background

### A.   The trial

The facts of this case are horrific.  This account reflects the Kentucky Supreme Court's recitation in its direct review of Cross's conviction.  *See Cross v. Commonwealth*, No. 2008-SC-465, 2009 WL 4251649 (Ky. Nov. 25, 2009).

In 2000, 18-year-old Jessica Currin's burned and decomposed body was found at a middle school.  *Id.* at *1.  The state of the body made it difficult to recover physical evidence.  *Id.*  But the presence of a burned belt next to the body indicated death by strangulation.  *Id.*  That is where the investigation focused.  Initially, two individuals were charged with the murder, but the indictments were dismissed due to discovery violations.  *Id.*  The case went cold until 2005 when Victoria Caldwell and Vinisha Stubblefield, who talked to the police right after the murder when they were still high schoolers, changed their stories to implicate Quincy Omar Cross.  *Id.*  The testimony of these two witnesses became the focal point of the trial.

Caldwell testified that she, Stubbfield, Currin, and Cross got together to do drugs and hang out at Jeff Burton's house.  *Id.* at *2.  On the way there, Cross and Caldwell sexually harassed Currin.  *Id.*  Once at Burton's house, Cross hit Currin on the head with a miniature baseball bat and carried her unconscious body to a bed.  *Id.*  Cross then attempted to have oral sex with Currin, but her mouth would not open.  *Id.*  Burton then began to rape Currin with Caldwell's help.  *Id.*  During this, Currin began to regain consciousness and repeat the name of her infant son.  *Id.*  So Cross hit her in the head with a wrench, knocking Currin out again.  *Id.*  Caldwell

later buried the wrench in her sister's yard, where police later recovered it. *Id.* Cross then strangled Currin to death with a black, braided leather belt. *Id.*

Cross then ordered several people, including Caldwell, to perform sexual acts on Currin's dead body. *Id.* Afterwards, the group took drugs and had sex with each other. *Id.* The group then wrapped Currin's body in a blanket and took the body to the garage. *Id.* Eventually, the body began to smell. *Id.* So Caldwell, Stubblefield, and several others took Currin's body to a middle school, where they burned the corpse. *Id.* Police later found a partially burned belt near Currin's body. *Id.* at *1. Caldwell identified it as the belt Cross used to strangle Currin. *Id.* at *2.

Caldwell also read from a diary that she said she kept during the investigation. *Id.* Her entries expressed fear that she would get caught. *Id.* She admitted to lying to police during the initial investigation in order to implicate the first two suspects. *Id.* at *3. She then moved to California and had no contact with the other suspects. *Id.*

Stubblefield's testimony differed somewhat. She testified that she was playing cards with a friend and Currin before Currin left to walk home. *Id.* Stubblefield then decided to go find Currin using Cross's vehicle. *Id.* Eventually, the same group described by Caldwell—Burton, Caldwell, Cross, and Stubblefield—formed to take drugs and locate Currin using a different car. *Id.* The group found Currin and offered her a ride. *Id.* She asked to be taken home. *Id.* But once she got in the car, the group began to sexually harass her and drove her to Burton's house. *Id.* At some point, Cross and Currin began arguing, resulting in Cross hitting her and forcing her to walk into the bedroom. *Id.* After about 20 minutes, Burton told Stubblefield to come into the room where she witnessed Cross pulling a belt across the neck of an unconscious Currin. *Id.* Cross and Burton began having sex with the unconscious Currin and then ordered Stubblefield to do the same. *Id.* She testified that the group then did drugs, had sex, and moved Currin's body into the garage. *Id.* Later, they took her body to the middle school. *Id.*

Several other witnesses testified as well. A deputy who arrested Cross for cocaine possession a day after the murder said Cross's pants kept falling because he did not have a belt. *Id.* Others testified that Cross made statements that either admitted to or implicated him in Currin's murder. *Id.* This included testimony from Cross's friend that Cross said he had sex with Currin the night she was murdered. *Id.* Caldwell's sister, Rosie Crice, testified that Cross told her he was present in the room when Currin was killed and that he was threatening Caldwell. *Id.* During the trial, however, she testified that Caldwell instructed her to lie about Caldwell being threatened. *Id.* at *3 n.2. She was cross-examined regarding this change in her story and later pled guilty to perjury. *Id.*

Cross's lawyer questioned Caldwell and Stubblefield on lies they told police after the murder and their changed stories. *Cross v. Commonwealth*, No. 2017-CA-000211, 2018 WL 3814615, at *2–3 (Ky. Ct. App. Aug. 10, 2018). They admitted that they had lied but claimed it was based on their fear of Cross's threats. *Id.*

In the end, Cross was convicted in 2008 of kidnapping (with an aggravator of murder), intentional murder (with aggravators of first-degree sodomy and first-degree rape), first-degree sodomy, first-degree rape, abuse of a corpse, and tampering with physical evidence.[1]  First Habeas Petition (DN 6) at 1. During the penalty phase, the jury considered the death penalty, but ultimately recommended life without parole. *Cross*, 2009 WL 4251649, at *1, 4, 10. Cross was sentenced to life in prison. *Id.* He quickly appealed, raising numerous issues, including prosecutorial misconduct for a "document dump," and arguing for a directed verdict. *Id.* at *1. On November 25, 2009, the Kentucky Supreme Court rejected Cross's arguments and affirmed the conviction. *Id.* at *13, *as modified on denial of reh'g* (Mar. 18, 2010). The court reaffirmed its holding on denial of a rehearing in 2010. *Id.*

## B.    Post-trial investigation

After Cross's conviction, the Kentucky Innocence Project began looking into his case. Dale Elliot Affidavit (DN 6-3) at 1. The record doesn't make clear when and to what extent Cross was aware of this. But in July 2012, Dale Elliot (a retired police officer who served as an investigator for the Innocence Project) signed an affidavit explaining his investigation into Cross's case. *Id.* at 1, 8. Elliot concluded that the case deserved a second look because, in his view, law enforcement officers abused their power and violated Cross's rights in order to get a conviction. *Id.* at 8. Elliot believed that Cross was a convenient political scapegoat because the Commonwealth had fumbled the prosecution of the initial suspects. *Id.* at 5–6. According to Elliot, the Attorney General was under pressure to solve the crime while running for higher officer. *Id.* So in turn, he pressured the Kentucky Bureau of Investigation to resolve the case. *Id.* The lead detective was a narcotics detective with no homicide experience, so he used intimidation tactics from narcotics to flip witnesses. *Id.* at 6. Elliot believed the police engaged in serious misconduct either out of malice or incompetence. *Id.* at 8.

Elliot reached these conclusions based on two types of information. First, the physical evidence did not match the story told by the Commonwealth's witnesses. They said the body was naked and moved with a blanket, but the body was found with clothes and without a blanket. *Id.* at 7. Also, investigators found no body decay

---

[1] Caldwell, Stubblefield, and Burton pled guilty to offenses related to the murder.

or maggots, as would've been expected if the body wasn't moved and burned until it began to stink. *Id.*

Second, several of the key witnesses were paid and coerced to give testimony inculpating Cross, despite having inculpated different suspects earlier in the case. *Id.* at 1–4. Caldwell had received $40,000 in reward money for cooperating and had initially told police a different story. *Id.* According to Elliot, Caldwell said she and Stubblefield made up statements to get the money despite not knowing anything about the crime. *Id.* at 2. Her testimony at trial, according to Elliot's description of Caldwell's post-trial statements, was just a recitation of what investigators told her to say. *Id.* And her diary was allegedly written in the back seat of the detectives' car at their direction. *Id.* Supposedly, Caldwell agreed to do this because the detectives were paying her bills and threatened to cut her off and even take her child if she refused. *Id.* at 3. Elliot also alleged that "several people" said one of the detectives fathered her child, though Caldwell denied this. *Id.* at 3–4. Caldwell did not directly inculpate or exculpate anyone, however, as she said she wasn't involved and therefore didn't know if Cross committed the crime. *Id.* at 2. Caldwell did, however, enter an *Alford* plea to abuse of a corpse and evidence tampering, for which she received a 5-year sentence. Op. (DN 15) at 2 n.1; Gov't Rule 5 Answer (DN 13) at 8, 14. Caldwell did not attest to these statements under oath, either; only Elliot did. In fact, Caldwell has since signed an affidavit denying the statements conveyed through Elliot and reaffirming her trial testimony. *Cross*, 2018 WL 3814615, at *3.

Elliot's affidavit also asserted that Crice, Caldwell's sister, was addicted to narcotics and willing to testify for a small amount of money. Elliot Aff. at 4–5. Elliot says Crice initially got involved for money, but stayed involved because officers threatened to jail her and take her child away if she did not continue to lie. *Id.* at 3–5. Crice, however, said as much on the stand during the trial. After Crice testified for the Commonwealth, Cross called her and she recanted her testimony, said she lied, and testified that detectives threatened to take her children away. *Cross*, 2018 WL 3814615, at *2. This was the basis for her perjury plea and conviction. *Id.*

Elliot also interviewed Stubblefield in April 2012. Stubblefield Interview (DN 6-2) at 52. Stubblefield said she did not get paid by the detectives, but that Caldwell did. *Id.* at 3. Stubblefield also stated that the detectives coerced her into lying about Cross and her involvement in the murder by threatening her and her mother with prosecution. *Id.* at 9–10, 13, 25–27, 30–31, 33–35, 37, 40. But her statement to Elliot didn't exculpate Cross, as she said she was not directly involved in the murder. *Id.* at 16. And she admitted that she feared Cross. *Id.* at 38; *Cross*, 2018 WL 3814615, at *3 ("[S]he still implicated Quincy [Cross] and observed that she was afraid of him."). Stubblefield ended up pleading guilty to the same charges as Caldwell and received a 7-year sentence. Stubblefield Interview at 5.

5

Joe Currin, the victim's father, agreed with Elliot's conclusion in an affidavit signed in October 2014. Joe Currin Affidavit (DN 6-4) at 5. Currin believed that the police, for political reasons, adopted a story concocted by Susan Galbreadth, a citizen who had an interest in clearing one of the original suspects and in getting reward money. *Id.* at 1–4; *see* Tom Mangold, *Murder in Mayfield*, BBC (May 17, 2013), https://www.bbc.com/news/magazine-19558804. He also believed Caldwell and Burton were not involved, the witnesses were forced to lie, and the testimony did not match the physical evidence. Joe Currin Affidavit at 1–4. This evidence forms the basis of Cross's actual innocence claim.

## C.   Procedural history

The procedural history of this case is long, winding, and important.

It began right after trial. Cross immediately appealed his conviction and sentence all the way up to the Kentucky Supreme Court, which rejected his arguments in 2009. *Cross*, 2009 WL 4251649, at *13. In June 2011, Cross sought post-conviction relief under Ky. RCr 11.42 based on ineffective assistance of counsel. First Petition at 3. The trial court denied relief in October, so Cross appealed in early 2012. *Id.*; Cross Ct. App. Brief (DN 13-9) at 1; Gov't Ct. App. Brief (DN 13-10) at 24. The Court of Appeals affirmed in February 2014. *Cross v. Commonwealth*, No. 2011-CA-002136-MR, 2014 WL 505575, at *5 (Ky. Ct. App. Feb. 7, 2014). By this point, Cross knew or should have known about the Innocence Project's evidence, as Elliot's evidence was signed in 2012. *Cross*, 2018 WL 3814615, at *2 ("Quincy's own exhibits, which were attached to the motion, demonstrate that he was aware of Vinisha and Victoria's recanted testimony by at least 2012, and Rosie's recanted testimony by 2008."). One of the claims that the court rejected was that Cross's counsel was ineffective for failing to discover Caldwell's and Stubblefield's inconsistent stories. *Id.* at *3. The court held that, to the contrary, trial counsel's central strategy was highlighting the inconsistent stories told by Caldwell and Stubblefield, even impeaching them about their prior statements to police. *Id.* The Kentucky Supreme Court denied discretionary review on May 6, 2015. *Id.* at *1.

After misfiring in state court, Cross set his sights on the federal system. Cross petitioned for a writ of habeas corpus in the Western District of Kentucky under 28 U.S.C. § 2254 on August 17, 2015. First Petition at 1. Cross raised four grounds for relief that the Kentucky Supreme Court had rejected: due-process violations related to a discovery dump, confusing jury instructions, insufficient evidence, and juror consultation of a Bible at the penalty phase. *Id.* at 5–10. And for the first time, Cross claimed actual innocence and referred to the Innocence Project's evidence that Caldwell and Stubblefield lied about their involvement. *Id.* at 12. With regard to his actual-innocence claim, Cross did not mention due process, the Constitution, or

misconduct as grounds for relief.  *Id.*  He also argued for ineffective assistance of post-conviction counsel for not seeking an evidentiary hearing on the new evidence.  *Id.*  Cross admitted that neither claim was exhausted.  *Id.*  The Commonwealth responded to all fifteen grounds for relief, arguing that the Kentucky Supreme Court and Court of Appeals reasonably rejected all of Cross's claims and that the actual-innocence claim and post-conviction ineffective-assistance claims were unexhausted and procedurally defaulted.  First Petition Response (DN 13).  Specifically, the Commonwealth argued that Cross always knew Caldwell and Stubblefield lied and that this was core to his defense.  So he should have raised actual innocence from the start.  *Id.* at 82–85.

The Magistrate Judge largely agreed with the Commonwealth, recommending that Cross either withdraw his unexhausted actual-innocence claim or stay his petition while he returned to state court to exhaust his claim.  Op. at 4 (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).  The Magistrate Judge noted that Cross's new evidence might allow him to bring an actual-innocence claim under Kentucky Rule of Civil Procedure 60.02(f) and that the U.S. Supreme Court might shed light on federal actual-innocence claims in the meantime.  *Id.* at 8–9.  In order to avoid a potential timeliness problem, the Magistrate Judge recommended staying the federal case while the state proceedings progressed.  *Id.* at 11.  Cross indeed opted to return to state court in early 2016.  Response to Op. (DN 17).  In doing so, he characterized his claim as one of actual innocence based on new evidence under Rule 60.02, not the federal Constitution.  *Id*; Rule 60.02 Motion (DN 55-2) at 1–5 (raising actual innocence under Rule 60.02, not federal due process or other constitutional grounds).

The Commonwealth objected, arguing that Cross's trial defense (like his new habeas claim) was premised on Caldwell and Stubblefield changing their stories, so he lacked new evidence or good cause to excuse Cross's procedural default.  Gov't Objections to Op. (DN 19, 22).  Before the objections were resolved, in November 2016, the state trial court denied Cross's Rule 60.02 motion for several reasons: the new evidence was suspect, the witnesses' changed testimony was known given that they were crossed for changing their testimony, and Cross should not have waited years to move under Rule 60.02.  Order Denying Motion for Relief (DN 34-1).  A couple months later, Judge Russell overruled the Commonwealth's objections because Cross was (at the time) a *pro se* petitioner who did not necessarily know when and how to bring his actual-innocence claim, or what role the Innocence Project was playing.  DN 35 at 9–11.  Judge Russell also ruled that the state courts should be able to finish those proceedings—and that even if the state courts ruled that Cross procedurally defaulted his claims, he might conceivably be able to bring a claim in federal court.  *Id.* at 11–13.  This was the first suggestion that Cross's collateral attack based on new information should be treated as a federal constitutional claim.  But no such constitutional claim was made in the state proceedings, including in Cross's motion

under Rule 60.02 and his briefs. Rule 60.02 Motion at 1–5; Cross Rule 60.02 Ct. App. Brief (DN 55-2) at 124–28; Motion for Discretionary Review (DN 55-2) at 155–57. And Cross didn't mention due process or misconduct in any of these motions or opinions.

In 2018, the Kentucky Court of Appeals affirmed the denial of Cross's Rule 60.02 motion. *Cross v. Commonwealth*, No. 2017-CA-000211, 2018 WL 3814615, at *4 (Ky. Ct. App. Aug. 10, 2018). The court held that the motion was procedurally barred because credibility issues with all three witnesses changing their stories were apparent at the time of direct appeal. *Id.* at *2–3. And in any event Cross knew about this "new evidence" in 2012 yet waited until 2016 to bring a Rule 60.02 motion. *Id.* at *2. The court also rejected Cross's arguments on the merits: Caldwell filed an affidavit denying that she recanted her testimony, Crice recanted at the trial and was crossed at the time, and Stubblefield's recantation did not exculpate Cross. *Id.* at *3. The Kentucky Supreme Court denied discretionary review in April 2019. *Id.* Again, in all his briefs across multiple proceedings Cross only argued for relief under Rule 60.02, not the Constitution, due process, or state misconduct. Rule 60.02 Motion at 1–5; Cross Rule 60.02 Ct. App. Brief at 124–128; Motion for Discretionary Review at 155–157.

Cross moved to lift the stay on his federal petition in September 2019, Motion to Lift Stay (DN 47), and filed a supplement to his habeas petition raising three claims, Supp. Petition (DN 52). The first ground for relief remained "actual innocence" based on new evidence. Supp. Petition at 5. Cross also maintained his previous ineffective-assistance claim for failure to investigate and his due-process claim for a directed verdict. *Id.* at 7–8. The actual-innocence claim does not mention due process, state misconduct, or even the Constitution—just that new evidence implicates "law enforcement in unduly pressuring" the witnesses. *Id.* at 5.

The Magistrate Judge recommended denying Cross's petition but granting a certificate of appealability. Second R&R (DN 57) at 1. The report framed Cross's actual-innocence claim as one of police misconduct under the Due Process Clause. *Id.* at 7–8. It also treated this claim as not procedurally defaulted or decided on the merits by the state courts because those decisions discussed Rule 60.02 rather than due process specifically or the Constitution generally. *Id.* 9–11. Instead, the Magistrate Judge recommended denying the petition because a due-process violation may require prosecutorial misconduct, not just police misconduct. *Id.* at 8 (citing *Blalock v. Wilson*, 320 F. App'x 396 (6th Cir. 2009)). But because this area of the law is unsettled, the Magistrate Judge recommended a certificate of appealability. *Id.* at 12–15. This report was the first mention of a federal due-process claim based on state misconduct, which Cross hadn't mentioned in his initial federal habeas petition, his state Rule 60.02 motion, any of his state court briefs, or his supplemental petition.

8

The Magistrate Judge's First Report and Recommendation had mentioned Rule 60.02 and suggested that federal caselaw on actual innocence might (or might not) have evolved when and if he returned to revive his federal habeas petition.  Op. at 8–9; First R&R (DN 18) at 1.  The Magistrate Judge also recommended that the ineffective-assistance and directed-verdict claims be denied because the state courts reasonably resolved them.  Second R&R at 15–18.

The Commonwealth objected: because the actual-innocence claim was unexhausted, it should be denied on that basis.  DN 59.  Cross objected because, in his view, the due-process distinction between police and prosecutorial misconduct is unfounded.  DN 58.  Cross also objected to the ineffective-assistance and directed-verdict recommendations to preserve the issues for appeal.  *Id.*

## II.  Discussion

Cross seeks federal habeas relief from a state conviction.  28 U.S.C. § 2254.  The "great writ," however, is an "extraordinary remedy" that should be granted only if an "extreme malfunction" occurred "in the state criminal justice systems."  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022).  Federal habeas is "narrowly circumscribed" in order to respect the province of state courts and the finality of their judgments.  *Id.* at 1730.  To police these narrow boundaries, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996.  *Id.* at 1731.  That act set forth several rules to ensure respect for state-court judgments.  *Id.*

First, prisoners must "exhaus[t] the remedies available in the courts of the State" by raising federal claims in state court under state procedures.  *Id.* at 1732 (alteration in original) (quoting 28 U.S.C. § 2254(b)(1)(A)).

Second, if a prisoner fails to follow state procedures or raise his federal claims there, the federal claims may be considered "procedurally defaulted."  *Id.*  Federal courts generally decline to hear procedurally defaulted claims absent a couple narrow exceptions recognized by the Supreme Court.  *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Wainwright* v. *Sykes*, 433 U.S. 72, 84–85 (1977).

Third, if a federal claim is properly presented and adjudicated by a state court, then a federal court may only grant relief if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or else "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  This review is limited to the state-court record and relief requires that no "fairminded jurist could have reached the same judgment."  *Shinn*, 142 S. Ct. at 1732 (quotation and alteration omitted).

9

Fourth, habeas relief shouldn't be granted unless the trial error resulted in "actual prejudice," meaning "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). A state court's own determination of prejudice also receives deference under AEDPA. *Brown v. Davenport*, 142 S. Ct. 1510, 1530–31 (2022).

So a federal court must ask if the state court's decision on an issue the petitioner raised in state court was both unreasonable in its application of federal law and also unreasonable in its determination that any error was harmless. *Id.* This makes obtaining habeas relief difficult, to say the least. *Id.* at 1526. But this is as Congress plainly intended, given that federal habeas is a last resort due to its implications for federalism and finality.

### A.   Cross's actual-innocence claim fails

In his original and supplemental petitions, Cross's primary claim is one of "actual innocence" based on "new evidence." First Petition at 12; Supp. Petition at 5. The nature of Cross's actual-innocence argument is not immediately apparent. Does he mean a freestanding claim for relief under the Constitution because evidence shows that he is in fact innocent, a "gateway" argument to revive an argument that otherwise would be procedurally defaulted, or a claim that the Commonwealth violated the Due Process Clause by committing misconduct (specifically by knowingly using perjured testimony against him)? The answer is unclear. Yet however the Court construes this petition, none offer Cross relief.

**1.   Cross's actual-innocence argument is not a "gateway" excuse for procedural default.** There are two basic types of actual-innocence arguments (although the Magistrate Judge considered a third and related possibility, as discussed below). Most are "gateways" that allow petitioners to avoid procedural hurdles such as AEDPA's statute of limitations or procedural-default rules. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Such contentions are "procedural, rather than substantive," in that they don't "provide a basis for relief" by themselves. *Id.* at 314–15. Instead, a claim of actual innocence serves as a "gateway" to have an "otherwise barred constitutional claim considered on the merits." *Id.* at 315 (quotation omitted).

At no point did Cross identify a barred underlying constitutional claim for which his actual-innocence claim could serve as a gateway. *See Smith v. Nagy*, 962 F.3d 192, 206 (6th Cir. 2020) (actual innocence couldn't be a gateway because petitioner identified no underlying constitutional claim). In his original petition, Cross brought numerous "due process" claims. The state courts resolved those claims on the merits. Petition at 5–12; *Cross*, 2009 WL 4251649, at *4–13; *Cross*, 2014 WL 505575, at *3–5. And the Commonwealth responded to those claims on the merits in his federal petition. First Petition Response at 35–80. The Commonwealth and the

Magistrate Judge initially treated Cross's actual-innocence claim as a standalone claim for relief—separate from the Due Process Clause—that Cross had not exhausted in state court. *Id.* at 82–85; Op. at 3–4; First R&R. Cross never objected to this framing, and took the Magistrate Judge's recommendation that he return to the state court to exhaust his actual-innocence claim. Response to Op.; Objections. That is the claim that the Court of Appeals adjudicated in the Rule 60.02 proceeding. *See generally Cross*, 2018 WL 3814615. And in his supplemental petition, Cross again brings his actual-innocence claim for relief, without mentioning any underlying constitutional claim. Supp. Petition at 5. On return to federal court, the Magistrate Judge considered this claim to be freestanding. Second R&R at 7. Cross didn't object.

None of these procedural machinations would've been necessary if Cross was using actual innocence as a gateway. So this Court declines to treat it as such.

**2. Cross's freestanding actual-innocence claim for relief is not cognizable.** Cross was actually advocating for the second type of actual innocence: a "freestanding" claim for substantive relief from his conviction or sentence. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *see, e.g.*, First Petition at 12; Supp. Petition at 5; Second R&R at 7 (determining, without objection, that the claim is "freestanding"); *Nagy*, 962 F.3d at 206–07 (finding a similar claim to be freestanding and non-cognizable). A "freestanding" actual-innocence claim involves the petitioner arguing that he is "entitled to habeas relief because newly discovered evidence shows that [the petitioner's] conviction is factually incorrect." *Herrera*, 506 U.S. at 404–05.

The U.S. Supreme Court has assumed, without deciding, that an actual-innocence claim may allow for relief in some types of death-penalty cases. *Id.* at 417. The Court has declined to answer whether such claims are otherwise cognizable. *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931–32 (2013); Leah M. Litman, *Legal Innocence and Federal Habeas*, 104 VA. L. REV. 417, 491–92 (2018). But the Sixth Circuit has. And it has responded with a resounding "no." *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (claim that incarcerating an actually innocent person violates due process is not cognizable in habeas); *Zuern v. Tate*, 336 F.3d 478, 482 n. 1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground for federal habeas relief, but rather that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding.'" (quoting *Herrera*, 506 U.S. at 400)). This was a sufficient basis to deny Cross's actual-innocence claim in the first instance. *See Bennett v. Rewerts*, No. 18-1730, 2018 WL 8732861, at *6 (6th Cir. Oct. 24, 2018) (denying a certificate of appealability, in part, because a freestanding claim is not cognizable); *Salters v. Burt*, No. 17-2426, 2018 WL 2341746, at *6 (6th Cir. May 23, 2018) (same).

The First Report and Recommendation nevertheless allowed Cross to return to state court to raise his actual-innocence claim under state law and exhaust it for federal review based on state courts' "more progressive" approach to actual-innocence claims and the "possib[ility] that the [U.S.] Supreme Court will issue a more definitive ruling while Petitioner is pursuing his state-court remedies." Op. at 4–9; First R&R. But those remedies couldn't have helped Cross in federal court. To the extent they rested on state law, no error could supply a basis for federal habeas relief. And to the extent they rested on federal law, no such claim is cognizable under Sixth Circuit precedent. Therefore, Cross had nothing to exhaust for later federal review.

Even if the Supreme Court had issued a "more definitive ruling" on freestanding actual-innocence claims, it would not have applied to Cross's case: any such decision would not have amounted to a "clearly established" Supreme Court holding at the time of the relevant state-court decision. 28 U.S.C. § 2254(d)(1); *White v. Woodall*, 572 U.S. 415, 419 (2014); *Richardson v. Kornegay*, 3 F.4th 687, 705 (4th Cir. 2021). And since any new ruling about when a prisoner may appeal based on new evidence of innocence would be a "procedural" rather than a "substantive rule"— a rule that changes the "range of conduct or the class of persons that the law punishes"—no subsequent Supreme Court decision would retroactively call the state-court's adjudication into question. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1562 (2021) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). The length of time state and federal courts have been considering these arguments helps explain why these rules of finality preclude reexamination in federal court on the grounds Cross raises. So Cross's freestanding actual-innocence claim is not cognizable.

But is there another possibility?

**3. Any "state-misconduct" claim is procedurally defaulted.** The Magistrate Judge considered the possibility that Cross's "freestanding" actual-innocence claim might be construed as a claim that the Commonwealth violated the federal Due Process Clause by committing misconduct in litigation—specifically, for knowingly using perjured testimony. Second R&R 7–8 (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). This is the only way Cross's claim might be cognizable on federal habeas. The problem for Cross is that he raised a freestanding actual-innocence claim, not a standalone state-misconduct claim. Because the state-misconduct claim was not fairly presented in state court, it is procedurally defaulted in federal court.

A "state-misconduct" claim is conceptually distinct from an actual-innocence claim of the variety discussed above. As opposed to a claim that new evidence proves the petitioner's innocence, *Herrera*, 506 U.S. at 404–05, 417, a state-misconduct claim is a due-process claim that the state misbehaved in some prejudicial way, *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (prosecutorial misconduct

under due process); *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019) (same). Establishing a due-process violation based on the knowing use of false or perjured testimony requires proof that the statement was actually and materially false, and that the state actors knew it. *Lochmondy*, 890 F.2d at 822; *see, e.g.*, *United States v. Bagley*, 473 U.S. 667, 684 (1985) (witness and prosecution gave misleading responses about government inducements); *United States v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979) (witness gave false impression on cooperation). While that misbehavior may show that the petitioner is also innocent, this sort of claim does not depend on a showing of the defendant's actual innocence; just the government's serious misconduct.

A federal court may only hear a claim if it was "fairly presented" to the state court, meaning "the petitioner asserted both the factual and legal basis for his claim to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). To determine whether a claim is "fairly presented," courts must consider whether the petitioner "(1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017); *Abdullah v. Groose*, 75 F.3d 408, 411–12 (8th Cir. 1996) (a Fourteenth Amendment due process claim does not encompass a Sixth Amendment claim even though they rested on the same facts). And the claim raised on federal habeas can't just be "similar"; it must be the same claim raised in state court. *Abdullah*, 75 F.3d at 411–12. For example, a general allegation that a petitioner's "fair trial" or "due process" rights were violated doesn't "fairly present" a claim that a specific constitutional right was violated. *McMeans*, 228 F.3d at 681; *Jacobs v. Mohr*, 265 F.3d 407, 416 (6th Cir. 2001); *Katt v. Lafler*, 271 F. App'x 479, 482 (6th Cir. 2008) (uttering the words "due process" was not enough to fairly present a claim).

Cross's state-court appeals and petitions didn't satisfy any of these prerequisites to raising a state-misconduct claim at this late date. His August 2015 petition included multiple grounds for relief described as "due process" claims, such as "confusing jury instructions" violating "Due Process" and insufficient evidence violating "Due Process." First Petition at 7–8; *Cross*, 2009 WL 4251649, at *5–6 (raising some of the same claims in terms of due process to the Kentucky Supreme Court). Cross even put his "document dump" claim in terms of "prosecutorial misconduct." First Petition at 5. But his "actual-innocence" claim based on "newly obtained evidence" does not mention due process, the Constitution, state misconduct, or anything similar—much less describe these allegations in terms of state misconduct. *Id.* at 12. This was insufficient to put the Commonwealth on notice that Cross was bringing a constitutional claim. And in fact the Commonwealth responded

that this claim was unexhausted and non-cognizable.  First Petition Response at 82–85.

The Magistrate Judge likewise took Cross's claim as a freestanding actual-innocence claim, recommending that he return to state court to adjudicate it under Kentucky Rule of Civil Procedure 60.02(f).  Op. at 8–9; First R&R.  The First Report and Recommendation made no mention of state misconduct or due process.  In fact, construing the innocence claim as one for misconduct would've been inconsistent with the notion that the Supreme Court might clarify the cognizability of freestanding actual-innocence claims in the meantime; the courts had already recognized a state-misconduct claim.  *See Lochmondy*, 890 F.2d at 822 (citing *Bagley*, 473 U.S. at 678).  And when Cross returned to state court, he characterized his claim as one of actual innocence based on new evidence under state Rule 60.02, not on state misconduct under the federal Constitution.  Response to Op.; Rule 60.02 Motion at 1–5 (citing Rule 60.02, not federal due process).

The same was true in the state-court proceedings.  None of Cross's filings mentioned the federal Constitution, due process, state misconduct, or any related cases—just actual innocence under Kentucky Rule 60.02.  Rule 60.02 Motion at 1–5; Cross Rule 60.02 Ct. App. Brief at 124–128; Motion for Discretionary Review at 155–157.  And it was under that state law that the Kentucky courts rejected Cross's final collateral attack; they never mentioned due process or any state-misconduct allegations.  Order Denying Motion for Relief; *Cross*, 2018 WL 3814615, at *2–3.  Neither Cross's filings nor the decisions resolving them cited state or federal caselaw dealing with due process violations resulting from perjured testimony.  *Hand*, 871 F.3d at 418.  Nor do they refer to a specific constitutional right or allege facts clearly implicating any recognized constitutional claim.  *Id.*  In fact, even Cross's supplemental federal petition did not frame his actual-innocence claim in terms of due process or state misconduct.  Supp. Petition at 5.  Ironically, Cross's only mention of due process is in connection with his claim for a directed verdict that he raised before.  *Id.* at 7–8.  Indeed, the actual-innocence claim has no mention of due process, state misconduct, or even the Constitution.  *Id.* at 5.  Unsurprisingly, the Commonwealth just argued that the state court reasonably decided Cross's actual-innocence claim, never mentioning a constitutional claim.  Response to Am. Petition (DN 55) at 11–14.  So it is impossible to conclude that a due-process claim premised on state misconduct from knowingly using perjured testimony was "fairly presented" to the state court.

When a claim is not "fairly presented," it may be deemed procedurally defaulted and therefore unavailable to assert in a federal habeas petition.  *See Shinn*, 142 S. Ct. at 1732; *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021).  A claim is procedurally defaulted when the petitioner fails "to comply with a

well-established and generally enforced state rule" that is an "adequate and independent state ground for denying relief." *Hodge v. Haeberlin*, 579 F.3d 627, 638 (6th Cir. 2009). Kentucky law provides several procedural bars to adjudication of a claim that was not timely presented. A prisoner must raise "any ground of which he is aware, or should be aware" under RCr 11.42 for post-conviction relief within three years of the final judgment. *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997). Rule 60.02 provides another avenue for relief where the issue couldn't have been reasonably known on appeal. *Id.*; Ky. R. Civ. P. 60.02.[2] But the rule is not meant to "relitigate the same issues which could reasonably have been presented by direct appeal or an RCr 11.42 proceeding," so only newly discovered problems may be raised. *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014). The most relevant grounds for a motion—newly discovered evidence or perjury—*must* be brought within one year of a final judgment. Ky. R. Civ. P. 60.02 (emphasis added).

This leaves Rule 60.02(f), which allows relief for "any other reason of an extraordinary nature justifying relief." *Id.* Such motions must be brought within a "reasonable time," which is within the "discretion of the trial court." *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983). And Rule 60.02(f) does not permit unlimited apple bites; a petitioner still must raise all claims he should reasonably know about in that motion. *See Foley*, 425 S.W.3d at 884 (denying fifth 60.02 motion as an "impermissible successive" motion and finding the claim procedurally defaulted); *Peeler v. Commonwealth*, No. 2020-CA-0656-MR, 2021 WL 2484034, at *1 (Ky. Ct. App. June 18, 2021) (denying second motion because issue should have been raised in earlier proceeding).[3]

---

[2] The Kentucky Court of Appeals ruled that the Innocence Project's "new evidence" was not actually new because everyone already understood—at trial—that the witnesses in question had changed their stories. *Cross*, 2018 WL 3814615, at *3. In fact, Cross had previously raised an ineffective-assistance claim because counsel didn't focus more on the witnesses' inconsistencies. *Id.* So to the extent this state-misconduct claim should have been or was in fact raised earlier, that could supply reasonable state grounds for dismissal all by itself. But evidence from the Innocence Project that the *police* coerced the witnesses into perjuring themselves is different in kind—and hadn't been raised previously. This argument raises different issues than witnesses merely changing their testimony, and perhaps explains why Cross did not raise a state-misconduct claim on direct appeal or post-conviction review.

[3] The Kentucky Court of Appeals also ruled that Cross did not file his Rule 60.02(f) motion within a "reasonable time" because he should have known about the Innocence Project's evidence by 2012, yet he did not move for relief for four years. *Cross*, 2018 WL 3814615, at *2. This is a reasonable determination by the state court, as the recanted statement was sworn in 2012. Other courts have found similar delays to be unreasonable. *See Gross*, 648 S.W.2d at 858 (five years untimely); *Reyna v. Commonwealth*, 217 S.W.3d 274, 276 (Ky. Ct. App. 2007) (four years after guilty plea was untimely). This too is sufficient to find the claim procedurally defaulted.

Cross obviously knew about the new evidence when the Magistrate Judge told him to return to state court under Rule 60.02.  Op. at 8–9; Response to Op.  Yet he did not raise a due-process claim.  Rule 60.02 Motion at 1–5 (discussing new evidence but not due process).  And it has now been ten years since the new evidence was disclosed and four years since the Court of Appeals denied his motion, yet Cross didn't file this supplemental petition until 2019, which is not within a "reasonable time."  *See Gross*, 648 S.W.2d at 858; *Reyna*, 217 S.W.3d at 276.  Even then, his supplemental petition doesn't mention due process or state misconduct.  Supp. Petition at 5.  Cross may not now bring a new claim that should have been brought when he returned to state court.  *Foley*, 425 S.W.3d at 884; *see also Guartos v. Colson*, No. 3:12-cv-48, 2013 WL 247415, at *27 (M.D. Tenn. Jan. 23, 2013) (petitioner defaulted similar state-misconduct claim by not raising it before state court).  So at the very least, Cross's potential state-misconduct due-process claim is now procedurally defaulted, even if it wasn't before.

The Magistrate Judge seemed to agree that the due-process claim, to the extent it relies on state misconduct, was not clearly resolved by the state court.  Second R&R at 9–11.  But he faulted the state court, not Cross, for failing to resolve this due-process claim.  But when the Magistrate Judge sent Cross back to state court, the focus was plainly on the prospect of a freestanding actual-innocence claim, not state misconduct.  Op. at 8–9.  Clearly no one was thinking about this variety of due-process claim, which was already cognizable under the caselaw.  This possible claim wasn't mentioned until the second R&R (at 9–11).  But AEDPA prevents federal courts from resolving unexhausted claims, 28 U.S.C. § 2254(b)(1)(A), and it is the petitioner's duty to "fairly present" those claims to the state court, *Nian*, 994 F.3d at 751.  It's not clear how a federal court could or should handle an unpresented claim de novo under AEDPA's standards.[4]  It is apparent that Cross could have raised any state-misconduct claim when he was sent back to state court.  But he did not.  This does not excuse him from the strictures of AEDPA.  Quite the opposite.  Any state-misconduct due-process claim is therefore procedurally defaulted and must be denied.

* * *

To tie off one final possibility: could Cross's actual-innocence claim serve as a *gateway* allowing him to raise his state-misconduct claim for the first time?  Second

---

[4] The Magistrate Judge ultimately concluded the claim was meritless because state misconduct requires the prosecutors (not just the police) to know testimony is false.  Second R&R at 8, 11 (citing *Blalock v. Wilson*, 320 F. App'x 396 (6th Cir.  2009)).  Because the Court resolves the claim on other grounds, however, the Court needn't address this theory or the recommendation for a certificate of appealability.

R&R at 10 (citing *Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018)).[5]  This is the point where even fed-courts professors' heads begin to swim.

The answer is no.  For the same reasons Cross's new due-process claim is defaulted, his actual-innocence claim cannot function as a gateway for that same claim.  Procedural default may be excused if the petitioner can show "cause and prejudice," or that the claim falls within the "narrow class of cases ... implicating a fundamental miscarriage of justice." *Schlup*, 513 U.S. at 314–15 (quotation omitted).

"Cause and prejudice" doesn't work here because the "cause" "must be something external to the" movant, which "cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  This typically involves ineffective assistance of post-conviction counsel by, for instance, failing to raise a claim when explicitly permitted to return to state court in order to exhaust factually identical claims.  Here, however, that decision clearly can be attributed to Cross.  The Magistrate Judge sent him back to state court for the express purpose of exhausting his claims, yet he never raised a state-misconduct claim.

Similarly, requiring a petitioner to clearly raise a claim before the state court when given the opportunity cannot amount to a "miscarriage of justice."  If this were not the case, then a petitioner could simply skirt state-court review and AEDPA's demanding standards by vaguely raising claims in state court and then recharacterizing the issues on habeas.  So Cross cannot now use his actual-innocence argument in federal court as a gateway for new claims he didn't raise in state court.  The evidence is no longer new, yet an actual-innocence gateway depends on the existence of "new evidence of innocence." *Schlup*, 513 U.S. at 316.  Cross knew about and raised this evidence to the state court, but failed to raise a due-process claim

---

[5] The precedents that the Second Report and Recommendation relied on do not imply that Cross's claim could serve as a gateway even though he failed to exhaust after being sent to state court for that very purpose.  First, the Tenth Circuit conducted a de novo review of a petitioner's actual-innocence claim because the state only resolved a state-law claim on the merits. *Farrar v. Raemisch*, 924 F.3d 1126, 1129–30 (10th Cir. 2019).  But procedural default was not at issue, as the state explicitly waived reliance on procedural default and the court decided the case on the grounds that a freestanding actual-innocence claim is non-cognizable. *Id.* at 1130–31 n.4.  Second, the Seventh Circuit remanded an actual-innocence claim for an evidentiary hearing where a witness recanted his testimony even though the petition was filed outside of the statute of limitations. *Arnold v. Dittmann*, 901 F.3d 830, 835–36 (7th Cir. 2018).  The Court noted that his actual-innocence claim was both a gateway and freestanding claim. *Id.* *Arnold* is inapplicable, however, because the petitioner did exhaust his actual-innocence claims in state court first. *Id.*  Only later did he seek federal relief, and then the issue was not procedural default but whether his actual-innocence claim could excuse his failure to meet the statute of limitations. *Id.*  So neither decision answers whether an actual-innocence claim may serve as a gateway even if the petitioner knew about the new evidence when he returned to state court but still failed to raise the claim.

along with that evidence. And in any event, Cross doesn't clearly raise a state-misconduct claim even now, much less argue that his actual-innocence claim serves as a gateway for it. Any due-process claim related to state misconduct is procedurally defaulted and cannot be excused.

## B.   The state courts reasonably decided all of Cross's claims on the merits

Even when claims are properly raised under AEDPA, a federal court's authority to grant relief on a claim "adjudicated on the merits in State court proceedings" is sharply limited. 28 U.S.C. § 2254(d). The state court's adjudication of that claim must've "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or else a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2). This review is limited to the state-court record and requires that no "fairminded jurist could have reached the same judgement." *Shinn*, 142 S. Ct. at 1732 (quotation and alteration omitted).

Cross's supplemental petition raised three claims: actual innocence, ineffective assistance of counsel in investigating and presenting an alternative-perpetrator theory, and a violation of due process by denying a directed verdict. Supp. Petition at 5–8. The Magistrate Judge concluded that the last two claims were reasonably decided on the merits. Second R&R at 15–18. Although Cross objected to these recommendations, he did not specify the grounds. DN 58 at 1. After reviewing the record, it is apparent that the state court reasonably decided all three claims on the merits.

**1.   The Kentucky Court of Appeals reasonably decided that Cross's new evidence would have had a minimal impact on his case.** As discussed at some length, Cross did not raise a state-misconduct claim in state court. So the state courts never decided that claim on the merits. But the state court *did* decide, under state law, that Cross's new evidence was insufficient to justify a new trial. *Cross*, 2018 WL 3814615, at *3. Under state law, the new evidence must be "of such decisive value or force that it would, with reasonable certainty, have changed the verdict." *Foley*, 425 S.W.3d at 886 (quotation omitted).

This standard sounds a lot like prejudice, which is necessary for Cross to receive relief. *See Kerbaugh & Rodes v. Whitaker Bank, Inc.*, No. 2011-CA-2112-MR, 2013 WL 3105524, at *5 (Ky. Ct. App. June 21, 2013) (declining to set aside civil judgment because plaintiff couldn't show mistake "prejudiced any of its substantial rights" under Rule 60.02(a)). A state prisoner must show that the error had a "substantial and injurious effect or influence" on the outcome of his trial in order to

18

get habeas relief. *Brown*, 142 S. Ct. at 1519 (quoting *Brecht*, 507 U.S. at 637). A state court's determination of a prejudice inquiry receives deference under AEDPA. *Id.* at 1530–31. If Cross properly raised a state-misconduct claim, achieving relief on that basis requires proof that the (1) statement was actually false, (2) material, and (3) the state actors knew it was false. *Lochmondy*, 890 F.2d at 822 (prosecutorial misconduct). Such claims of perjury are also subject to the "harmless-error analysis." *Monea*, 914 F.3d at 421; *Bagley*, 473 U.S. at 679–80 (perjury is "considered material unless failure to disclose it would be harmless beyond a reasonable doubt"). Although the U.S. Supreme Court has perceived some daylight between materiality and harmlessness, *Bagley*, 473 U.S. at 679–83, it is hard to imagine how that difference would matter here. So the factual and legal conclusions by the state court that Cross's new evidence would not have seriously affected the verdict are both relevant and worthy of deference.

The Court of Appeals made four relevant rulings regarding Cross's new evidence.

First, and most easily defensible, is that Crice's recantation to Elliot didn't matter because the jury already heard her recant during the trial, as well as her cross-examination on this point. *Cross*, 2018 WL 3814615, at *3.

Second, Caldwell's recantation was raised only in Elliot's affidavit and was undermined by her later affidavit denying that recantation and reaffirming her inculpatory testimony at trial. *Id.* It was reasonable for the state court to discount Caldwell's alleged exculpatory statement on this basis. *Id.* (affirming trial court's denial of collateral relief based on limited persuasiveness of Elliot's affidavit in light of Caldwell's subsequent denial and other evidence in the trial record)).

Third, although Stubblefield did say she was pressured to falsely implicate Cross, none of her statements exculpated him. *Id.* Instead, she maintained she was afraid of him. *Id.* Moreover, the state noted that recanted testimony is given very little weight under Kentucky law and cannot, standing alone, justify a new trial. *Id.* (citing *Thacker v. Commonwealth*, 453 S.W.2d 566, 568 (Ky. 1970)). Federal law similarly has a "natural distrust of after-the-fact witness recantations." *Guidry v. Sheets*, 452 F. App'x 610, 613 (6th Cir. 2011) (citing *United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964)). And federal courts must defer to a state court's credibility determination with respect to recanted testimony. *Id.* (citing 28 U.S.C. § 2254(e)(1)).

Fourth, and finally, the state court reasonably concluded that the trial record included enough other evidence (including Cross's own incriminating statements) to support the jury's verdict regardless of the new evidence. *Cross*, 2018 WL 3814615, at *4. So the Court of Appeals found no abuse of discretion in denying Cross's Rule 60.02 motion, since he could not show "extraordinary circumstances" to justify relief.

*Id.* at *1, 4 (quoting *Berry v. Cabinet for Families & Children ex rel. Howard*, 998 S.W.2d 464, 467 (Ky. 1999)).

A federal court must defer to these reasonable factual and legal determinations about the prejudicial impact (if any) of Cross's new evidence. *See Guidry*, 452 F. App'x at 613 (deferring to weight state court gave to recanted testimony). The state court reasonably determined that the verdict would have remained the same despite the new evidence. So in deference to that ruling, any purported federal error would not have had a "substantial and injurious effect or influence" on the outcome of Cross's trial under *Brecht's* harmless-error standard or the test for state misconduct. *Brecht*, 507 U.S. at 637; *Monea*, 914 F.3d at 421. So no relief can be granted for this harmless alleged error.

**2.   The state courts reasonably determined that Cross's counsel was not ineffective.** Cross argues that his counsel was ineffective in failing to present a theory of alternative perpetrators and that his counsel was cumulatively ineffective. Supp. Petition at 7. Ineffective-assistance claims require proof of deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quotations and citations omitted).

The Kentucky Court of Appeals determined that Cross's counsel was not ineffective because he argued that the first two suspects committed the murder and provided evidence to support that theory. *Cross*, 2014 WL 505575, at *5. So the court ruled that Cross's claim was factually incorrect. *Id.* This decision was not contrary to clearly established Supreme Court caselaw and did not reach any unreasonable factual determinations. As to Cross's argument that his counsel was cumulatively ineffective, the state court ruled that Cross's other ineffective-assistance claims were meritless. *Id.* at *2–5. So when all assertions of errors "are all essentially meritless, [a petitioner] cannot show that the cumulative error of [his trial attorneys] rendered [them] ineffective." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Any such claim is even more tenuous now, given that Cross continues to press only one theory of ineffective assistance; in other words, nothing is left to accumulate. As a result, the state court's ruling was reasonable and Cross's ineffective-assistance claims must fail.

**3.   The state court reasonably determined that Cross was not entitled to a directed verdict.** Cross argues that his convictions for capital kidnapping and first-degree rape were contrary to state law and thus violated due process. Supp. Petition at 8; Cross Ky. Sup. Ct. Brief (DN 13-3) at 35–43. This contention is *not* framed as a question of federal law. So it is unclear how the alleged violation of state

law could violate federal due process and allow for relief under AEDPA. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

But in any event, the Kentucky Supreme Court rejected both of Cross's claims. To begin, the court held that Cross kidnapped Currin by forcefully taking her to Burton's house instead of her own home as promised. *Cross*, 2009 WL 4251649, at *9. The Sixth Circuit rejected a similar argument that a petitioner's conviction for kidnapping was contrary to state law because a ruling by the Kentucky Supreme Court on state law is binding on a federal court. *Gilbert v. Parke*, 763 F.2d 821, 825–26 (6th Cir. 1985). The same is true here.

Similarly, Cross argues that no evidence indicated Currin was alive during the sexual assault, so he couldn't be convicted of first-degree rape. Supp. Petition at 8. Again, the Kentucky Supreme Court disagreed, holding there was sufficient evidence based on testimony that the assault began before the strangulation and that Cross bragged about having sex with Currin the night of the murder. *Cross*, 2009 WL 4251649, at *9. There is no basis to question this ruling on state law by Kentucky's highest court. Nor was the state court's decision contrary to clearly established federal law, as it is unclear how due process is even relevant. Since the state court's determinations were reasonable, Cross's claims must be rejected.

## C.    No certificate of appealability is warranted

When a court denies habeas relief, it must determine whether a certificate of appealability should be issued in order for the petitioner to seek appellate review. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate is issued when "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. (quotations omitted). The Magistrate Judge recommended granting a certificate based on unsettled law regarding whether a state-misconduct claim premised on perjury requires prosecutorial misconduct, or rather if police misconduct is sufficient. Second R&R at 11–15.

This decision does not rest on that ground, however. Instead, Cross's actual-innocence claim is either non-cognizable or procedurally defaulted. No reasonable jurist could debate these conclusions because Sixth Circuit precedent is clear and Cross failed to raise a known claim when explicitly allowed to return to state court in order to exhaust his claims. All of Cross's remaining claims, including his actual-innocence claim, were reasonably decided by the state court. No reasonable jurist could question these determinations given the deference AEDPA requires. So no certificate of appealability should issue.

### III.   Conclusion

The facts of this case are chilling.  And so are the allegations against the investigators.  But Congress strictly limited federal courts' ability to second-guess state-court convictions in the name of federalism and finality.  *Brown*, 142 S. Ct. at 1530–31.  So habeas is an extremely high bar, and one Cross cannot meet.  But the federal courts are not Cross's only avenue to relief.  If his evidence of malfeasance is truly compelling, Cross could seek a pardon or clemency from the Governor.  *Herrera*, 506 U.S. at 411–17; Ky. Const. § 77.

The Court adopts in part and rejects in part the Second Report and Recommendation (DN 57), overrules Cross's objections (DN 58), sustains the Commonwealth's objections (DN 59), denies Cross's § 2254 petition (DN 6), and denies a certificate of appealability.

Benjamin Beaton, District Judge

United States District Court

August 19, 2022